## A97A0010. NEY v. THE STATE.

(489 SE2d 509)

RUFFIN, Judge.

David Harold Ney appeals from his conviction on two counts of child molestation and one count of aggravated child molestation. For reasons which follow, we affirm.

Construed in the light most favorable to support the verdict, the record shows the following. Sixteen-year-old C. L. H. testified that when she was twelve years old, she spent the night at the home of Ney and his wife Doris, who is C. L. H.'s grandmother. The next morning, Ney entered C. L. H.'s bedroom while she was sleeping, pulled up her shirt and bra, and put his mouth on her breasts, at which point she awoke. C. L. H. further testified that Patricia Haynes, who was staying with the Neys, walked into the bedroom during the incident and "saw [Ney] pull my shirt down real quick."

Haynes testified that on the day in question, she opened the door to C. L. H.'s room and saw C. L. H. "laying spread eagle on a beach towel" with her shirt pulled up and her arm over her eyes. Haynes also saw Ney kneeling on the towel below C. L. H.'s feet. When Haynes asked Ney what he was doing, Ney stated that he was rubbing cream on C. L. H.'s stomach. A few days later, Haynes described the incident to C. L. H.'s grandmother, who testified that she immediately asked C. L. H. about it. C. L. H. responded that Ney had not "done anything to her" and that he had simply rubbed lotion on her back. At trial, C. L. H. explained that she denied the incident when initially questioned by her grandmother because she doubted her grandmother would believe her.

C. L. H. also testified about another incident that occurred while she was living with the Neys the following year. According to C. L. H., on that occasion Ney entered her bedroom when her grandmother was at work, pushed her shorts and underwear to the side, and placed his mouth on her vagina. Ney denied both incidents described by C. L. H.

In addition, the State presented the testimony of seven-year-old J. B., Doris Ney's grandniece. J. B. testified that when she was approximately three years old, David Ney touched her on her "private." J. B. further explained where she was touched by circling the area around the vagina on a diagram of a girl. Denying any molestation, Ney testified that J. B.'s "panties [were] pulled up into her crack and [he] reached and got them and pulled them out." Doris Ney also testified that this incident occurred in the living room and that she saw her husband "pull[ ] the panty where it would slip down out of the crack. He did not touch anywhere around her vagina or buttocks at all."

On cross-examination, J. B. agreed that Ney pulled her under-

wear from her "crack." She also testified, however, that Ney rubbed her with his hand and that his actions made her feel "[v]ery sad." J. B. further stated that Doris Ney did not witness the incident, which occurred in a back bedroom. J. B.'s testimony was bolstered by C. L. H., who testified that J. B. told her Ney touched her vagina.

The jury found Ney guilty of child molestation and aggravated child molestation of C. L. H. and child molestation of J. B. The jury acquitted Ney of an additional count of child molestation relating to a third child. Ney subsequently moved for a new trial. The trial court denied Ney's motion, and this appeal followed.

1. Ney claims that the evidence was insufficient to support his conviction on two counts of child molestation and one count of aggravated child molestation. We disagree.

On appeal, Ney's conviction will be upheld if the evidence, construed favorably to support the verdict, was sufficient to authorize the jury to find him guilty beyond a reasonable doubt of these offenses. *Brewer v. State*, 219 Ga. App. 16 (1) (463 SE2d 906) (1995); *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). "Conflicts in the testimony of the witnesses, including the State's witnesses, is a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citations and punctuation omitted.) *Brewer*, supra at 17.

The former version of OCGA § 16-6-4 (a), under which Ney was indicted, provided that "[a] person commits the offense of child molestation when he does any immoral or indecent act to or in the presence of or with any child under the age of 14 years with the intent to arouse or satisfy the sexual desires of either the child or the person."[1] Aggravated child molestation is "an offense of child molestation which act physically injures the child or involves an act of sodomy." OCGA § 16-6-4 (c).

We find the evidence in this case sufficient to authorize a rational trier of fact to find Ney guilty beyond a reasonable doubt of the child molestation and aggravated child molestation of C. L. H. and the child molestation of J. B. *Brewer*, supra. Ney's claim that the State failed to prove intent with respect to the charge relating to J. B. is without merit. "Intent, which is a mental attitude, is commonly detectible only inferentially, and the law accommodates this. OCGA § 16-2-6." *Branam v. State*, 204 Ga. App. 205, 206 (1) (419 SE2d 86) (1992). "A reviewing court will not disturb a factual determination by

---

[1] Effective July 1, 1995, the General Assembly amended this Code section in several ways, including raising the relevant age in the definition of molestation from 14 to 16 years old. OCGA § 16-6-4 (a).

the jury on intent unless it is contrary to the evidence and clearly erroneous. The intent with which an act is done is peculiarly a question of fact for determination by the jury and even when a finding that the accused had the intent to commit the crime charged is supported by evidence which is exceedingly weak and unsatisfactory the verdict will not be set aside on that ground." (Citations and punctuation omitted.) Id. at 205-206.

J. B. testified that Ney touched her vagina in a back bedroom. "From these facts it can be inferred that [Ney] committed those acts in order to satisfy his own sexual desires." *In re J. B.*, 183 Ga. App. 229, 231 (358 SE2d 620) (1987).

2. Ney also claims that the trial court erred in excluding evidence of C. L. H.'s alleged past false accusation of child molestation. Before evidence of a prior false accusation can be admitted, the trial court "must make a threshold determination outside the presence of the jury that a reasonable probability of falsity exists." (Citations and punctuation omitted.) *Smith v. State*, 259 Ga. 135, 137 (1) (377 SE2d 158) (1989).

Pursuant to this requirement, the trial court held a hearing relating to the prior false accusation. The defense presented the testimony of Arnie Cain, who testified that C. L. H. had accused his brother-in-law, Terry, of "messing with her" in a swimming pool. In an effort to establish the accusation as false, Cain testified that he was at the pool and "there was no molestation there." He further stated his belief that Terry remained at least ten feet from C. L. H. while in the pool. On cross-examination, however, Cain conceded that he did not know exactly what C. L. H. claimed happened that night. He also admitted that he was playing with other children and did not watch C. L. H. and Terry the entire time they were in the pool.

Following this testimony, the trial court concluded that the evidence failed to establish a reasonable probability of falsity. We agree. Although Cain claimed he saw "no molestation," he was not privy to the substance of C. L. H.'s accusations and admittedly did not watch C. L. H. the entire time she was in the pool with Terry. Neither Terry nor any other witness to the alleged molestation testified at the hearing, and we can find no evidence in the record that Terry denied the accusation. Compare *Smith*, supra. The trial court properly excluded this evidence.

3. Ney further argues that the trial court erred by not permitting Ney one full hour for closing argument, despite the requirements of OCGA § 17-8-73. Closing arguments were not transcribed below. At the hearing on his motion for new trial, however, Ney proffered witness testimony that his argument was cut short.

Ney's proffer is insufficient to preserve this alleged error for

review. " 'Where the transcript or record does not fully disclose what transpired at trial, the burden is on the complaining party to have the record completed in the trial court under the provisions of OCGA § 5-6-41. [Cit.]' " *Whitt v. State,* 215 Ga. App. 704, 707 (3) (452 SE2d 125) (1994) (physical precedent only). "Outside testimony provides no material basis for reconstructing a transcript from recollection. The only means for reconstructing a transcript from recollection is via agreement of the parties or their counsel or independent recollection of the trial judge. OCGA § 5-6-41 (g)." Id. at 708.

Our decision on appeal must be based upon the record. Id. In this case, no record relating to closing arguments exists, and Ney made no effort to complete the record under OCGA § 5-6-41. "Consequently, the issue raised in this enumeration is deemed abandoned by [Ney's] failure to supplement the record by any of the methods approved under OCGA § 5-6-41 (d) or (g)." (Citations and punctuation omitted.) Id.

4. Finally, Ney argues, through new appellate counsel, that his trial counsel provided ineffective assistance at trial. After an evidentiary hearing at which Ney's trial counsel and several other witnesses testified, the trial court determined that trial counsel was effective. We find no basis on which to reverse the trial court's determination.

"To establish a claim of ineffective assistance of counsel, [Ney] must show both that his trial counsel's performance was deficient and that counsel's deficiency so prejudiced his defense that a reasonable probability exists that the result of the trial would have been different but for that deficiency. *Strickland v. Washington,* 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). [Ney] must establish both the performance and the prejudice components of the *Strickland* test." *Johnson v. State,* 222 Ga. App. 722, 728 (9) (475 SE2d 918) (1996). "A conviction will not be reversed on the basis of ineffective assistance of counsel unless 'counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' [Cit.]" *Cunningham v. State,* 222 Ga. App. 740, 743-744 (2) (475 SE2d 924) (1996).

Ney cannot meet his burden simply by questioning trial tactics. " 'Trial strategy and tactics do not equate with ineffective assistance of counsel. . . . [T]he fact that [Ney] and his present counsel disagree with the decisions made by trial counsel does not require a finding that [Ney's] original representation was inadequate.' [Cits.]" *White v. State,* 193 Ga. App. 428, 430 (2) (387 SE2d 921) (1989). Trial counsel's decisions regarding "which witnesses to call, whether and how to conduct cross-examinations . . . and all other strategies and tactical decisions are [within] the exclusive province of the lawyer after consultation with the client." (Citations and punctuation omit-

ted.) *Hudson v. State*, 218 Ga. App. 671, 672 (1) (462 SE2d 775) (1995). To succeed in his claim, Ney "must overcome the strong presumption that counsel's conduct falls within the broad range of reasonable professional conduct." (Citations and punctuation omitted.) *White*, supra. Absent clear error, we will affirm the trial court's finding that Ney received effective assistance of trial counsel. *Johnson*, supra.

(a) Ney first characterizes trial counsel's performance as ineffective because counsel is related by blood to C. L. H., one of the victims. At the hearing on Ney's motion for new trial, trial counsel testified that C. L. H.'s mother is his first cousin. He further testified that he saw C. L. H. on only two occasions before the trial and that his relations with Ney and his wife, whom he had previously represented, were stronger than his relations with C. L. H. The record also shows that Ney knew trial counsel was related to C. L. H. before the trial and that trial counsel took the case at the request of Ney and his wife.

"To establish ineffective assistance of counsel due to a conflict of interest on the part of trial counsel, a defendant who raised no objection at trial must prove that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance." (Citations and punctuation omitted.) *Sartin v. State*, 223 Ga. App. 759, 760 (1) (479 SE2d 354) (1996); see also *Tenant v. State*, 218 Ga. App. 620, 623 (4) (g) (462 SE2d 783) (1995) ("When conflict of interest is raised in a post-conviction proceeding, the petitioner must show actual conflict which caused his counsel's performance to be adversely affected." (Citations and punctuation omitted.)). Ney does not contend that he raised the claimed conflict of interest at trial. Instead, Ney argues that trial counsel had an actual conflict of interest that impaired his representation in this case.

Pretermitting whether any actual conflict existed, or whether there is any difference between a conflict based upon relationship and one based upon dual representation, the record evinces no evidence that trial counsel's work was impaired by any "divided loyalties," as Ney claims. Trial counsel conducted a thorough cross-examination of C. L. H., challenged her recollection of events, and attempted to impeach her with prior inconsistent statements. We find no evidence that trial counsel's performance was adversely affected by his relationship to C. L. H.

(b) Ney further argues that trial counsel did not adequately investigate the case or properly prepare for trial. In particular, Ney asserts that counsel's failure to interview the child victims prior to trial illustrates his ineffectiveness.

The record shows, however, that trial counsel sought and received full discovery from the State. Trial counsel also provided the

State with detailed information relating to various defense witnesses, indicating that counsel conducted his own investigation. In addition, trial counsel reviewed and highlighted statements and other information obtained from the State, and discussed the case with defense witnesses before trial. Although trial counsel admittedly did not interview the children involved in the case, he spoke with J. B.'s mother and explained that he did not contact C. L. H. because "[Ney] told [him] that she had disappeared." The record further shows that trial counsel considered and investigated various theories for Ney's defense, including (1) the possibility that C. L. H. fabricated her story; (2) an alleged prior false allegation by C. L. H.; (3) a family feud between Ney's wife and the mother of one of the victims; and (4) potential bias against Ney by the investigating officer.

We find that trial counsel investigated numerous avenues for defense and prepared his witnesses for trial. Furthermore, trial counsel reviewed the State's evidence relating to the children's allegations and cross-examined each child. Even if trial counsel's failure to interview the victims constituted deficient performance, Ney has not shown how it prejudiced his defense. The trial court did not err in refusing to find trial counsel ineffective on this ground. See *Duitsman v. State*, 217 Ga. App. 435 (1) (457 SE2d 702) (1995).

(c) We also reject Ney's claim that trial counsel was ineffective because he was unable to introduce evidence of C. L. H.'s alleged prior false accusation of molestation. As discussed in Division 2, the trial court properly deemed the evidence insufficient to satisfy the required threshold showing for admissibility. Despite trial counsel's inability to make the threshold showing, we find no evidence that counsel was deficient. The record shows that trial counsel spent at least one hour discussing the incident with his primary witness, Arnie Cain, and had several follow-up conversations with Cain about his expected testimony. When Cain testified, however, he apparently forgot details about the incident that he had previously related to trial counsel.

Ney argued at the new trial hearing that trial counsel should have questioned Cain differently. Yet, the record does not show that any deficiency in trial counsel's performance hindered his examination of Cain or prevented introduction of this evidence at trial. Trial counsel's tactical decisions about his examination of this witness do not equate with ineffective assistance of counsel. See *Hudson*, supra.

(d) Ney next criticizes trial counsel's failure to present evidence of his good character at trial. Although trial counsel developed good character evidence, he elected not to introduce it because he was afraid "that might have opened up a can of worms, because [he] did not know what the State would do in rebuttal" and he was aware of witnesses that might challenge Ney's good character. Trial counsel's

"decision to not place [Ney's] character in issue is a matter of trial tactics and does not equate with ineffective assistance of counsel." *Owens v. State*, 207 Ga. App. 153, 155 (1) (427 SE2d 529) (1993); see also *Mitchell v. State*, 223 Ga. App. 319, 320 (5) (477 SE2d 612) (1996).

(e) Ney further argues that trial counsel deficiently failed to present evidence of C. L. H.'s reputation for untruthfulness. At the new trial hearing, several witnesses testified that C. L. H.'s reputation in the community was "bad" and that they would not believe her under oath. Trial counsel also testified that he knew about C. L. H.'s reputation for untruthfulness and planned to question witnesses about her reputation, but "forgot."

Given trial counsel's candid admission, his failure to present this evidence cannot be considered trial tactics or strategy. Even if this failure constitutes deficient performance, however, we find no error in the trial court's conclusion that counsel was effective.

As described at the new trial hearing, Ney's defense centered around showing that the child victims were not telling the truth. Trial counsel testified that he attempted to establish C. L. H.'s lack of credibility by bringing out inconsistencies in her story and showing that she (1) delayed in reporting the crime; (2) was angry with Ney and used these allegations to "get back at him"; and (3) denied the molestation when initially confronted by Doris Ney.

The record shows that though counsel did not present evidence of C. L. H.'s reputation, he pursued several avenues for attacking her credibility. Although we are troubled by counsel's failure to present this evidence, it does not appear from the record that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Cunningham*, supra. Accordingly, we find no abuse in the trial court's decision to reject Ney's ineffective assistance of counsel claim on this ground.

(f) Ney's claim that trial counsel ineffectively failed to move for a directed verdict of acquittal as to Count 4 of the indictment, which involved molestation of J. B., has no merit. As found in Division 1, the evidence was sufficient to support the jury's verdict on Count 4. "It follows that trial counsel's failure to move for a directed verdict on this ground did not amount to deficient performance." *Sartin*, supra at 762.

(g) Ney also claims trial counsel was ineffective in not requesting a jury charge on simple battery as to Count 4. According to Ney, simple battery was a lesser included offense of the child molestation charge relating to J. B. because the jury could have found him guilty of mere intentional physical contact by "adjust[ing] [J. B.'s] panties when they became stuck in the crack of her bottom." J. B. conceded

that the touch cited by Ney occurred. That touch, however, does not form the basis of Count 4. Instead, the indictment accuses Ney of molesting J. B. by "placing his hand on [her] vagina[.]"

The record establishes no basis for a charge on simple battery as a lesser included offense of the crime alleged in the indictment. J. B. testified that Ney fondled her on her vagina; Ney denied that he touched J. B. as claimed. "Under this testimony, [Ney] either committed an act of child molestation or he did not. His testimony would not show that he had merely made physical contact of an insulting or provoking nature with the victim rather than fondling her with the intent to arouse or satisfy his sexual desires." *Brooks v. State*, 197 Ga. App. 194, 195 (1) (397 SE2d 622) (1990). Accordingly, trial counsel's performance was not deficient on this ground. *Stephens v. State*, 208 Ga. App. 620, 621 (2) (d) (431 SE2d 422) (1993).

(h) We find no merit in Ney's claim that trial counsel was ineffective in failing to preserve for review the argument that the trial court erroneously limited closing argument. Although Ney's argument is not clear, we assume this allegation revolves around trial counsel's failure to have closing arguments recorded. Ney, however, "had no right to have . . . closing arguments fully recorded. [Cits.] Accordingly, the fact that trial counsel did not request that . . . arguments be fully recorded did not deprive [Ney] of any right and would not serve to demonstrate that [his counsel] was ineffective." *Anderson v. State*, 206 Ga. App. 354, 356 (4) (426 SE2d 6) (1992).

Furthermore, we note that OCGA § 5-6-41 provided Ney the means to reconstruct the proceeding for purposes of appeal, potentially removing any prejudice from the absence of a transcript. Apparently, Ney did not explore this option.

(i) Ney further argues that trial counsel's performance was deficient because he failed to request a jury instruction on OCGA § 24-9-85 (b) relating to false swearing by a witness. The trial court charged the jury on witness credibility and impeachment. According to Ney, however, a jury charge on OCGA § 24-9-85 (b) was warranted by evidence regarding C. L. H.'s prior inconsistent statement, her conduct toward Ney following the incidents, and her motives for fabricating the allegations. This claim is without merit.

"OCGA § 24-9-85 (b) is applicable where the witness admits that he wilfully and knowingly swore falsely, or where the testimony is such as to render the purpose to falsify manifest." (Citations and punctuation omitted.) *Perguson v. State*, 221 Ga. App. 212, 215 (2) (470 SE2d 909) (1996). Ney does not claim that C. L. H. admitted to swearing falsely. Furthermore, we find that the evidence does not " 'render [C. L. H.'s] purpose to falsify manifest.' [Cit.]" Id. "Under these circumstances, [C. L. H.'s] credibility was for the jury under proper instruction from the court regarding credibility and impeach-

ment. [Cit.]" Id. Trial counsel's decision not to request a charge under OCGA § 24-9-85 (b) was proper.

(j) We similarly find no deficiency in trial counsel's failure to request a charge that " 'a bare suspicion is not sufficient to establish a fact.' [Cit.]" *Stinson v. State*, 151 Ga. App. 533, 540 (3) (260 SE2d 407) (1979). The evidence presented at trial raised more than a "bare suspicion" of Ney's guilt. In particular, the child victims testified directly about Ney's acts of molestation. In light of the evidence presented, trial counsel's decision not to request a "bare suspicion" charge did not constitute ineffective assistance.

(k) Ney next argues that trial counsel failed to lay a proper foundation for introducing a prior inconsistent statement by Patricia Haynes. The record shows that Ney did not raise this ineffective assistance claim in his motion for new trial. Accordingly, "he is barred from raising it here." *Sartin*, supra at 762.

(l) Finally, Ney claims that his trial counsel was unprepared for trial, failed to present an adequate defense, and failed to prepare him to testify. We disagree.

In subdivision (b) above, we determined that trial counsel properly investigated and prepared for trial. Furthermore, the record reveals that trial counsel pursued numerous avenues of defense at trial in an effort to discount the victims' allegations. Trial counsel's testimony at the new trial hearing further shows that he adequately prepared Ney to testify at trial. Specifically, counsel discussed Ney's testimony with him for at least six hours, explained the process, and described the types of questions the prosecution might ask on cross-examination.

We find no evidence that trial counsel's overall performance was deficient or prejudicial to Ney. This conclusion is buttressed by trial counsel's success in obtaining an acquittal on one of the four charges against Ney. As we have previously found, "[t]he strongest evidence of trial counsel's effectiveness was the jury's acquittal" on a charge. *Young v. State*, 213 Ga. App. 278, 280 (3) (444 SE2d 598) (1994); see also *Abreu v. State*, 206 Ga. App. 361, 363 (1) (425 SE2d 331) (1992). The trial court did not err in denying Ney's motion for new trial on ineffective assistance of counsel grounds.

*Judgment affirmed. Birdsong, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED APRIL 29, 1997 —
RECONSIDERATION DENIED JULY 24, 1997 —

*Lenzer & Lenzer, Robert W. Lenzer, Thomas P. Lenzer*, for appellant.

*Daniel J. Porter, District Attorney, Jennifer M. Risley, Assistant District Attorney*, for appellee.